**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gregory Paul WILLIAMS,**
**Defendant-Appellant.**

**No. 83–1609.**

United States Court of Appeals,
Sixth Circuit.

Argued June 7, 1984.

Decided Feb. 15, 1985.

F. Randall Karfonta (argued), Detroit, Mich., for defendant-appellant.

Gregory Williams, pro se.

Leonard R. Gilman, U.S. Atty., Thomas A. Ziolkowski (argued), Elizabeth A. Wild,

Asst. U.S. Atty., Detroit, Mich., for plaintiff-appellee.

Before ENGEL and MERRITT, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

ENGEL, Circuit Judge.

A one-count indictment was returned in the United States District Court for the Eastern District of Michigan charging defendant Gregory Paul Williams with the intentional and unlawful possession of approximately 996.12 grams of cocaine, a Schedule II, narcotic drug controlled substance, in violation of 21 U.S.C. § 841(a)(1). The charges arose out of Williams' arrest on May 6, 1982 at the Detroit Metropolitan Airport following a search of his luggage. On December 23, 1982, Williams moved to suppress the cocaine seized in that search as evidence. This motion was denied by then United States District Judge Patricia J. Boyle who found the airport search which uncovered the cocaine to be constitutional. On June 20, 1983, Williams entered a plea of guilty to the charge, but pursuant to Fed.R.Crim.P. 11(a)(2), he reserved the right to challenge the search and seizure which preceded his arrest.

On appeal, Williams challenges Judge Boyle's finding that the search in the Detroit Airport was constitutional. Judge Boyle determined that the initial encounter between Williams and Paul Cleeves, a detective sergeant with the Michigan State Police, was not a Fourteenth Amendment seizure. She held that if Williams was seized, the seizure amounted to a brief investigatory detention which was permissible under *United States v. Tolbert,* 692 F.2d 1041, 1047–48 (6th Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 337, 78 L.Ed.2d 306 (1983). Judge Boyle found that there was a reasonable and articulable suspicion that the defendant was engaged

in criminal activity sufficient to warrant the temporary stop. She then held that Williams voluntarily consented to the search which ultimately led to the discovery of the cocaine.

■ We agree with Judge Boyle's conclusion that if the initial encounter between Williams and Cleeves was a seizure, it was a permissible brief investigatory detention. In *Tolbert,* we stated that a brief investigatory detention is permissible if supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity. *Id.* at 1046–47. Articulable suspicion is to be based upon all the circumstances, and an assessment of the whole picture "must raise a suspicion that the particular individual being stopped is engaged in wrongdoing." *Id.* at 1047 (quoting *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).

■ The specific facts relied upon by Judge Boyle in finding a reasonable and articulable suspicion are well set out in the memorandum opinion and are supported by our own examination of the full record. Williams (1) was on a flight from a "source city," (2) was one of the first passengers to get off the airplane, (3) initially passed the baggage area and went outside the terminal and then returned to the baggage area, (4) glanced about nervously, and (5) was recognized by the police officer as having been in the company of a known drug dealer. Under these circumstances, we find that there was a reasonable and articulable suspicion that Williams was engaged in criminal activity.[1]

■ Judge Boyle then held that Williams consented to the search of his bags. We agree. Consent must be proved by clear and positive testimony and must be

---

1. Since we find that there was a reasonable and articulable suspicion that Williams was engaged in criminal activity, we need not address whether the initial encounter constituted a seizure within the meaning of the Fourth Amendment. See *United States v. Tolbert,* 692 F.2d 1041, 1045–46 (6th Cir.1982), *cert. denied,* —— U.S.

——, 104 S.Ct. 337, 78 L.Ed.2d 306 (1983), which adopted the standard of Justice Stewart's plurality opinion in *United States v. Mendenhall,* 446 U.S. 544, 554–55, 100 S.Ct. 1870, 1877–78, 64 L.Ed.2d 497 (1980), for determining when an encounter constitutes a seizure within the meaning of the Fourth Amendment.

unequivocal, specific, and intelligently given, uncontaminated by any duress and coercion. *United States v. McCaleb*, 552 F.2d 717, 721 (6th Cir.1977). The prosecutor has the burden of proving that consent was given freely and voluntarily. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). While there was clearly disagreement between Williams and Officer Cleeves as to what took place, Judge Boyle credited the testimony of Officer Cleeves.

■ Accepting these findings, we have little difficulty in upholding Judge Boyle's determination that the search of Williams' baggage was consensual, although it occurred in the greater privacy of the lost baggage area of the airport. There was a singular lack of any coercion when Williams accompanied Cleeves voluntarily to the baggage office.[2] Williams was not threatened with detention if he refused to consent to the search. There was no weapon in view. Officer Cleeves was alone. Williams did not object to Cleeves opening his baggage, but instead responded, "No problem," to Cleeves' request to look in the suitcase. Williams denied that he had responded, "No problem," to the request for consent to search the bag; however, Judge Boyle specifically believed Officer Cleeves' testimony was credible and disbelieved Williams. In addition, Williams assisted Cleeves in opening the suitcase by twice setting the tumbler on its combination lock. Considering these circumstances, we find that Williams freely and voluntarily consented to the search of his baggage.

■ The more difficult question is whether there was also consent for Cleeves

to cut open a gift-wrapped box which was found in the suitcase and in which the cocaine was ultimately discovered. The box had originally been put aside when Cleeves went through the luggage. When that initial search produced no contraband, Cleeves stated, "You're all set to go, except for the box." To this, Williams replied, "You're looking." Williams' comment was cryptic. Nonetheless, Judge Boyle found that in the context in which the statement was made, it was not ambiguous and constituted a voluntary consent to the search of the package.[3]

Judge Boyle's determination that Williams voluntarily consented to the search of the package is well supported by the evidence. As noted above, there was no duress or coercion surrounding the search. In fact, Williams agreed to accompany Cleeves to a private area, agreed to the search of his luggage, and assisted in the search by unlocking the suitcase. In light of these facts, Williams' statement, "You're looking," is consistent with his prior cooperation with the authorities. Moreover, as noted by Judge Boyle, the defendant was a 36-year old man of normal intelligence with an 11th grade education, and such statements were consistent with her observation that "Defendant is not an articulate individual. At the evidentiary hearing, his responses often consisted of incomplete sentences of a few words." We hold that the search of the package in this case was also voluntary.

■ It may well be wondered why an individual who knows that his belongings contain drugs would ever consent to a

---

**2.** Williams contends that he was arrested when he accompanied Cleeves to the baggage area. Judge Boyle found that Williams accompanied Cleeves voluntarily upon Cleeves' suggestion that the baggage area would afford Williams greater privacy. Williams was always free to leave. There was no arrest. *See United States v. McCaleb*, 552 F.2d 717, 719 (6th Cir.1977).

**3.** The government argues alternatively that having properly obtained Williams' consent to the search of his suitcase, that consent extended as well to the search of the package. The government cites as authority *United States v. Ross,*

456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), in which the Supreme Court held that police who have probable cause to search an entire vehicle may conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages which may conceal the object of the search. Since we find that Williams consented to the search of the package, we do not decide whether the Supreme Court's holding in *Ross* would extend beyond the context of the automobile exception to the Fourth Amendment.

search, unless he concluded that he was not free to leave or to resist the search. This is, of course, a very valid consideration in determining the ultimate question of voluntary consent, but we do not believe that the only conclusion one can reach in these circumstances is that the search was involuntary. As the Supreme Court stated in *United States v. Mendenhall,* 446 U.S. 544, 554, 559, 100 S.Ct. 1870, 1877, 1880, 64 L.Ed.2d 497 (1980), "the question is not whether the [defendant] acted in her ultimate self-interest, but whether she acted voluntarily." In a footnote accompanying the text, the Court further stated: "It is arguable that the [defendant] may have though she was acting in her self-interest, by voluntarily cooperating with the officers in the hope of receiving more lenient treatment." *Id.* at 559 n. 7, 100 S.Ct. at 1880 n. 7. Williams also might have believed that if he acted with apparent openness, the officer might be persuaded that it was not necessary to proceed with the search of the box. On the other hand, it might be that Williams concluded that he was in all events caught, since he did not know what else the officers might know, and that perhaps his best bet was to appear to consent and then make a contrary claim at a later suppression hearing. In any event, we do not believe that Judge Boyle's failure to define Williams' specific subjective motivation for his conduct compels us to disturb the conclusion that there was a lawful stop and a consensual search.

Although frequent, drug charges arising from searches and seizures in airports are as varied in their several aspects as any other type of seizure; they defy any effort to be reduced to one standard common to the location in which they take place. In the final analysis, each case must be examined upon its own facts, and an appellate court is obliged to place a good deal of reliance upon the fact-finding capability and the integrity of the trial judge who presided at the evidentiary hearing. We do so here.

■ As an additional ground for appeal, Williams claims that it was improper for the trial court to compel him to answer questions concerning whether he knew he was carrying drugs. In this respect, Williams relies on Fed.R. of Evid. 104(d), which provides that by testifying upon a preliminary matter, an accused does not subject himself to cross-examination as to other issues in the case. Williams asserts that under this rule he was not required to respond to the questions about his knowledge. However, Judge Boyle determined, over defense counsel's objection, that these questions were proper under the cited rule because they were directly related to Williams' earlier testimony denying that he had shown any signs of nervousness at the time of his original apprehension. In *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court held that when a defendant testifies in support of a motion to suppress evidence, his testimony may not be used against him thereafter unless he makes no objection. This decision formed the basis for the subsequently enacted rule, Fed.R. of Evid. 104(d). While we agree with Judge Boyle's determination that the questions regarding his knowledge were properly put to Williams because he had placed his own credibility in issue by his earlier testimony, we also agree with the government that no prejudice has been shown from the question asked. Williams was still free to go to trial and there insist that the government prove its case before a jury beyond a reasonable doubt. He also knew that his statement could not be used against him, at least as long as he did not decide to testify. We hold that the questioning was proper here and that in any event it did not prejudice him. Williams' guilty plea amounted to an admission of each element of the crime to which he pled, and this necessarily included an admission of his knowledge of the presence of drugs in his possession.

AFFIRMED.