884 F.2d 581
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John Alphonso SMITH, Defendant-Appellant.
 No. 89-5096.
 United States Court of Appeals, Sixth Circuit.
 Sept. 7, 1989.
 
 Before RALPH B. GUY, Jr., BOGGS and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an airport search and seizure case. Defendant, John Smith, had been stopped at the Greater Cincinnati International Airport on June 16, 1988, by Officer David Bunning of the Greater Cincinnati International Airport police. Smith was stopped as a result of meeting the drug courier profile. Bunning approached Smith, identified himself and his purpose, and asked Smith to identify himself, which he did. Smith produced a driver's license and his airline ticket, which ticket had been paid for in cash shortly before his departure from Los Angeles to Cincinnati. Smith indicated he had been in Los Angeles for two or three days to visit his girlfriend. Smith had only hand-carried luggage and he voluntarily consented to let Bunning search his luggage. The search was conducted in a small first-aid room located near the baggage area. The luggage search revealed no narcotics, but did produce Smith's Cincinnati to Los Angeles airline ticket which had been purchased, with cash, the previous day and shortly before departure. All during the time that Bunning and Smith were in the first-aid room, Officer Phil Harney was also present. Harney had followed Smith and Bunning into the first-aid room when he noticed Bunning taking Smith in that direction.
 
 
 2
 As the search of the luggage was being completed, Bunning noticed a golf-ball size bulge in one of Smith's jeans' pockets. He asked Smith what it was, and Smith reached in and removed some change. The bulge remained. Smith then took out a round object wrapped in duct tape which he handed to Bunning. Smith said he found it on the plane and thought it was candy. Bunning unwrapped the duct tape and found a ball of tar-like substance which Bunning believed to be black tar heroin. Bunning then asked Smith to accompany him to the nearby airport police station. The two officers and Smith travelled to the police station in Harney's police car. Prior to Smith entering the car, he was patted down and a second black tar ball was discovered. When field tests confirmed both balls to be black tar heroin, Smith was arrested.
 
 
 3
 After arrest and indictment Smith filed a motion to suppress, which was referred to a magistrate for a report and recommendation. Although Smith did not ask for an evidentiary hearing, the government did, and the magistrate held a hearing on the motion to suppress. The motion to suppress contained no particulars as to the reasons for suppression and was not accompanied by a brief.
 
 
 4
 At the hearing, all of the persons involved in the airport search and seizure testified, including Smith. The principal change in Smith's testimony from what he had earlier told the police was that he now claimed someone on the airplane paid him to take the heroin balls through the airport. He disclaimed any ownership interest in the heroin, and said that although he knew he was transporting "dope," he did not know what kind.
 
 
 5
 Subsequent to the hearing, defendant filed a memorandum with the court. The memorandum concedes that the search of the luggage was consensual but denies that defendant consented to a search of his person. Although the memorandum does not say so, implicit in this argument is that defendant did not voluntarily take the heroin out of his pocket and give it to Bunning.
 
 
 6
 At the conclusion of the hearing, the magistrate recommended denying the motion to suppress. The magistrate concluded that the initial stop of Smith as a result of his matching the drug courier profile passed muster. The magistrate also concluded that any and all searches were consensual and that Smith had voluntarily surrendered the heroin to Bunning. As an additional reason for denying the motion, the magistrate concluded, based on Smith's testimony, that Smith lacked standing to contest the search since he disclaimed any ownership of the heroin.
 
 
 7
 The defendant filed objections to the magistrate's report and recommendation, raising only two points. First, he argued that taking the defendant to the first-aid room made the case factually analogous to Florida v. Royer, 460 U.S. 491 (1983). Second, he argued that although the luggage search was consensual, the search of the person was not. The district judge considered the magistrate's report and the defendant's objections de novo, adopted the magistrate's proposed findings of fact and conclusions of law, and denied the motion to suppress.
 
 
 8
 After the motion to suppress was denied, Smith entered a conditional guilty plea to the charge of possession of heroin with intent to distribute. Fed.R.Crim.P. 11(a)(2). Smith then filed this appeal. Although the brief filed on appeal does not set forth a statement of issues, it essentially repeats the arguments made before the magistrate on the motion to suppress.
 
 
 9
 Upon a review of the record, we conclude that the district court was correct in denying the motion to suppress, and we affirm (with one qualification) on the basis of the reasoning and analysis set forth in the magistrate's report which was adopted by the district court.
 
 I.
 
 10
 Our review of this matter is limited to the two objections which defendant made to the magistrate's report and recommendation. One of these is a factual argument and the other a legal one. As for the factual argument, defendant argues that he did not consent to a search of his person. The magistrate heard the defendant's explanation as well as the recounting of the events by the two police officers. The magistrate and the district judge, upon a de novo review of the record, chose to credit the officers' version. Unless we are able to conclude that these credibility determinations were clearly erroneous, we must affirm them. After our own review of the record, we conclude, as did the district court, that it was appropriate to credit the government's version of what transpired. As to why suspects stopped at airports consent to searches which they know will turn up narcotics, we can only repeat the observation we made recently in United States v. Knox, 839 F.2d 285 (6th Cir.1988), cert. denied, 109 S.Ct. 1742 (1989):
 
 
 11
 As this court recently noted in United States v. Williams, a similar airport drug search case, a defendant in such circumstances may believe that his "best bet [is] to appear to consent [to the search] and then make a contrary claim at a later suppression hearing."
 
 
 12
 Id. at 294 n. 5 (quoting United States v. Williams, 754 F.2d 672, 676 (6th Cir.1985)).
 
 II.
 
 13
 Defendant's legal argument is somewhat hard to follow, but apparently involves a contention that the result in this case should be controlled by the decision of this court in United States v. Clardy, 819 F.2d 670 (6th Cir.1987), and the Supreme Court's decisions in Florida v. Royer, 460 U.S. 491, and United States v. Cortez, 449 U.S. 411 (1981).
 
 
 14
 In Clardy, we found an airport search to be illegal because the defendant did not meet the drug courier profile, and that was the only reason offered in justification for the initial stop. The only portion of the drug profile that the defendant personally fit in Clardy was arriving from a source city. This is in stark contrast to the instant case where Smith (1) arrived from a major source city, (2) was the last to deplane, (3) continually looked around in a nervous manner, (4) had no checked luggage, and (5) attempted to leave the airport hurriedly by moving ahead of others in the taxi line.
 
 
 15
 United States v. Cortez was a border stop that the Supreme Court found justified under Terry v. Ohio, 392 U.S. 1, 29 (1968). We can find no support in Cortez for defendant's arguments.
 
 
 16
 In Florida v. Royer, the Supreme Court found an airport search to be illegal. The facts in Royer are clearly distinguishable, however, from this case. In Royer, the "voluntary" consent to search luggage did not occur until the police had questioned Royer, retained his identification and airline ticket, and had taken him to another location in the airport without any indication by word or deed that he was free to leave. In the case at bar, Smith readily consented to a luggage search at curbside, but to avoid embarrassment to Smith, the search was conducted elsewhere with Smith's consent. We find nothing in Royer that requires a reversal of the conviction.
 
 III.
 
 17
 The magistrate also found that Smith lacked standing to contest the seizure of the heroin because he disclaimed ownership of it. Although we do not necessarily reject this analysis, neither do we adopt it. The cases involving standing that are factually similar are generally cases in which the defendant has disavowed any interest in the "container" in which drugs or other contraband are ultimately found. Here, the heroin was on defendant's person, and he certainly has standing to object to a search of his person even if he ultimately gives a "how did that get there" reaction to what is found. Since we find the search to be a proper one, based on articulable suspicion for the initial stop and a consensual search thereafter, we do not need to bottom our holding on the standing issue.
 
 
 18
 AFFIRMED.