956 F.2d 271
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edward L. KELLY, Defendant-Appellant.
 No. 91-5453.
 United States Court of Appeals, Sixth Circuit.
 March 3, 1992.
 
 Before NATHANIEL R. JONES and DAVID A. NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Edward L. Kelly was convicted following a guilty plea of possession of cocaine with the intent to distribute. He appeals the district court's denial of his motion to supress evidence. For the reasons that follow, we affirm.
 
 
 2
 * A detailed review of the facts of this case, which is on appeal for the second time, can be found in United States v. Kelly (Kelly I), 913 F.2d 261, 263-64 (6th Cir.1990). The facts relevant to this second appeal are as follows.
 
 
 3
 On or about April 28, 1988, the defendant, Kelly, an African-American male, flew from Los Angeles, California to Memphis. After he deplaned, Forrest Roberts and Beverly Archer, officers on the Drug Task Force at the Memphis International Airport, followed Kelly to the baggage-claim area. Officer Roberts had heard a rumor about Kelly, which caused the officers to suspect that he was transporting drugs. Kelly had brief contact in the baggage-claim area with another African-American male, later determined to be his stepbrother. Kelly then picked up his bags, and the two officers approached him. The officers asked if they could question him, and Kelly agreed. They asked him if he lived in Memphis. He replied that he did, but when asked to produce identification, Kelly had only a California license and an expired Delta Airlines work identification card. He explained that he had been laid off for such a long time that he had acquired a driver's license in California while staying there, but this explanation did not satisfy the officers. Rather, it increased their suspicion of Kelly, and they requested permission to search his bags. He allowed them to search two of his three bags, but the third was locked, and he told them he did not have the key. He stated, however, that the officers could break open the bag.
 
 
 4
 Kelly agreed upon request to accompany the officers to an office where the bag could be opened. When he entered the room, Officer Archer patted him down for weapons. The parties disagreed as to whether Kelly consented to the weapon search. The district court found that Kelly did not consent to the weapon search. The search revealed no weapons, but Officer Archer discovered some money in Kelly's pocket and some marijuana in his sock. On the basis of this find, she read him his Miranda rights and arrested him. Archer testified that upon her mentioning that she would hate to break the lock on his suitcase, Kelly gave her the key to the suitcase, which he had had all along. Kelly disputes this story, saying instead that Officer Archer discovered the key in his wallet as a result of her searching his person, and then used it to open the suitcase. Inside the suitcase, she uncovered packages of cocaine amounting to eleven kilograms.
 
 
 5
 A grand jury indicted Kelly on one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) (1988). Kelly moved to suppress the evidence, alleging that it was discovered without his consent. The district court initially granted the motion on the grounds that the searches of Kelly's person and of his locked suitcase were violations of the Fourth Amendment. The United States appealed the order granting Kelly's motion to this court, however, whereupon this court reversed as to the search of the locked suitcase. Specifically, the Kelly I court held that the district court's opinion was incorrect because it concluded as a matter of law that there could be no consent after an unlawful search. Kelly I, 913 F.2d at 266. While the district court's decision could have properly rested "on a factual finding that consent was revoked," id. at 266, it did not; thus, this court remanded for the district court to reconsider whether "Kelly's consent had been entirely a sham," id. at 267. In other words, this court instructed the district court to determine whether Kelly had actually intended to allow the officers to search the locked bag.
 
 
 6
 Upon remand, the district court denied Kelly's motion to suppress, finding that Kelly did indeed consent to the officers searching his bag, however much he may have hoped they would not. Kelly thereafter entered a guilty plea and was convicted and sentenced to 120-months imprisonment and a five-year term of supervised release.
 
 II
 
 7
 This court must decide whether the district court, on remand, properly denied Kelly's renewed motion to suppress. We are specifically asked to decide whether Kelly's alleged consent to the search of his bags was a "sham" or whether Kelly revoked his consent once he and the officers had moved to the office.
 
 
 8
 Kelly argues, in so many words, that no drug courier in his or her right mind would voluntarily consent to having a bag searched that contained cocaine. He claims that his consent must have been a sham under the circumstances, emphasizing his testimony that he never really thought the officers would actually break open his suitcase.
 
 
 9
 While Kelly's argument has some persuasive force at first blush, this circuit's opinion in United States v. Williams, 754 F.2d 672 (6th Cir.1985), effectively forecloses our accepting it. As the Williams court pointed out, although it may seem illogical for a drug courier to ever consent to a search of his bags, at least a few sensible reasons for such conduct can be imagined. One example given in Williams is that a courier might believe that he is about to be discovered, and decide to cooperate in hopes of receiving more lenient treatment. 754 F.2d at 676. Another example, which seems particularly likely under the facts of the instant case, is that a defendant may have "believed that if he acted with apparent openness, the officer[s] might be persuaded that it was not necessary to proceed with the search of the box." Id. Kelly may have hoped that the officers would not want to go to the trouble of breaking into the bag of a person who seemed willing and unafraid to allow it; thus, he may not have actually meant for them to have ever opened the bag. The officers, of course, cannot be expected to distinguish "sham" consent from "real" consent. To the Drug Task Force officers, as well as to the district court and this court, if the owner of a locked bag says "I do not have a key, but you can break it open," it signals permission to search.
 
 
 10
 The district court, as stated above, determined on remand that Kelly gave his consent for the search when he told the officers that they could break open the bag. This court may only overturn the district court's factual findings in a suppression hearing if they are clearly erroneous. See United States v. Breen, 419 F.2d 806, 807 (6th Cir.1969). The Williams court emphasized this standard, saying that "an appellate court is obliged to place a good deal of reliance upon the fact-finding capability and the integrity of the trial judge who presided at the evidentiary hearing." 754 F.2d at 676.
 
 
 11
 We find that there are sufficient facts to support the district court's findings as to the events surrounding Kelly's arrest. Accordingly, the district court's ruling is AFFIRMED.