976 F.2d 734
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard MOORE, Defendant-Appellant.
 No. 91-2386.
 United States Court of Appeals, Sixth Circuit.
 Sept. 17, 1992.
 
 Before KENNEDY and NATHANIEL R. JONES, Circuit Judges, and CELEBREZZE Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, Richard Moore, appeals the Judgment and Commitment Order of the United States District Court for the Eastern District of Michigan, Southern Division. Defendant had been indicted on one count of violating 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute Heroin. Prior to trial, defendant filed a Motion to Suppress Evidence requesting an evidentiary hearing to determine whether the evidence to be introduced against him was the fruit of an unlawful seizure. A hearing was, in fact, held on September 9, 1991, at which time the district court denied defendant's motion to suppress. Defendant then entered a conditional plea of guilty pursuant to FED.R.CRIM.P. 11(a)(2), preserving his right to appeal the denial of his Motion to Suppress. Defendant was sentenced to five years imprisonment plus four years supervised release. Defendant filed a timely Notice of Appeal.
 
 I.
 
 2
 On February 12, 1991, Defendant flew from Atlanta, Georgia to Detroit, Michigan. Greg Morris, a deputy sheriff for Wayne County, Michigan, was on duty at the Detroit Airport with his partner, Cora, a drug sniffing dog. When defendant walked in the vicinity of Morris, Cora the dog stopped and began to sniff the air. This action indicated to Morris that the dog was "alert" and probing for possible drugs but had not positively detected any drugs. Defendant, who was carrying a suitcase, represented the only person in the immediate area. Morris thus decided to observe defendant as he passed through the terminal. As Morris followed defendant, he noted that defendant would continually turn his head and look behind in Morris's general direction.
 
 
 3
 Defendant exited the airport and hailed a taxi cab, placing his suitcase in the trunk of the cab. To prevent defendant from leaving, Morris, leaving the dog behind, approached defendant identifying himself as a deputy and requesting permission to ask defendant a few questions. At trial, both men and the taxi driver described the exchange as congenial. Defendant voluntarily showed Morris his airline ticket, a one way ticket from Atlanta to Detroit paid for in cash.
 
 
 4
 At that point, Lieutenant Jeriel Heard, also of the Wayne County Sheriff's office, approached the two men. Morris left Lt. Heard and defendant in order to retrieve the dog. Lt. Heard identified himself as a deputy to defendant and requested to speak with him further. Defendant, upon a request from Lt. Heard, produced his driver's license. Lt. Heard checked, via the police radio, whether defendant had any criminal history. The inquiry proved negative. Thereupon, the driver's license was immediately returned to defendant. Lt. Heard asked if he could search defendant's suitcase to which defendant agreed. Lt. Heard suggested the search could take place inside a glass enclosed depot, about ten feet away, thereby ensuring that defendant's possessions would not be soiled. This was agreed to by defendant. When Lt. Heard attempted to open the suitcase, he found it locked, however, defendant produced the key from his pocket. Inside the suitcase, Lt. Heard discovered $12,000.00 in currency and 22 egg-shaped packages covered with electrical tape. The packages later proved to contain approximately 250 grams of heroin. Defendant was placed under arrest and given his Miranda warnings. Defendant admitted the $12,000.00 in cash was his, but claimed no knowledge of the egg-shaped packages.
 
 
 5
 After the arrest and the subsequent search and discovery of the money and heroin, Morris closed the suitcase and placed it next to other suitcases to conduct a training exercise with the dog. The dog first sniffed the suitcase of a flight attendant and had no reaction. When Cora sniffed defendant's suitcase, however, she attacked it, ripping the suitcase's side. Morris testified that he allowed the dog to perform in this manner as part of her training to allow her to first develop and then confirm her suspicions that drugs were present.
 
 
 6
 At the suppression hearing, defendant took the stand. He testified that he had refused to consent to a police search of his luggage and that the officers removed his suitcase from the trunk of the taxi and brought it to the glass enclosed area without his permission. He again admitted the $12,000.00 was his, but still denied any knowledge of the heroin.
 
 
 7
 The district court judge found the testimony of the government's witnesses to be more credible than defendant's. The court found police put little pressure or coercion on defendant and that he had consented to the search. The judge indicated that he found it implausible that defendant could claim the $12,000.00 was his, while denying knowledge of how the heroin got into his locked suitcase. On that basis, the district judged ruled against defendant, denying his Motion to Suppress.
 
 II.
 
 8
 Defendant contends on appeal that the district court erred by not granting his Motion to Suppress Evidence. Defendant argues that his Fourth Amendment rights were violated because his person had been seized without an articulable suspicion when he was detained outside of the airport by the officers. Defendant further argues that this illegal seizure violated his rights, tainting the subsequent search of his luggage and as a result any evidence discovered must be suppressed. Defendant also posits that the attack on his suitcase by the dog was another violation of his constitutional rights.
 
 
 9
 The United States Supreme Court has recently held as follows:
 
 
 10
 Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free "to disregard the police and go about his business," California v. Hodari D., 499 U.S. ----, ----, 113 L.Ed.2d 690, 111 S.Ct. 1547 (1991), the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature. The Court made precisely this point in Terry v. Ohio, 392 U.S. 1, 19 n. 16, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968): "Obviously, not all personal intercourse between policemen and citizens involve 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."
 
 
 11
 Since Terry we have held repeatedly that mere police questioning does not constitute a seizure. In Florida v. Royer, 460 U.S. 491, 75 L.Ed.2d 229, 103 S.Ct. 1319 (1983) (plurality opinion), for example, we explained that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." Id., at 497, 75 L.Ed.2d 229, 103 S.Ct. 1319; see id., at 523, n. 3, 75 L.Ed.2d 229, 103 S.Ct. 1319 (Rehnquist, J., dissenting).
 
 
 12
 ... The Court has dealt with similar encounters in airports and has found them to be "the sort of consensual encounter[s] that implicate no Fourth Amendment interest." Florida v. Rodriguez, 469 U.S. 1, 5-6, 83 L.Ed.2d 165, 105 S.Ct. 308 (1984).
 
 
 13
 Florida v. Bostick, 115 L.Ed.2d 389, 398 (1991); See also United States v. Tillman, 963 F.2d 137, 142 (6th Cir.1992).
 
 
 14
 Accordingly, in the instant case, the police officers had every right to approach defendant to ask him a few initial questions. Defendant's argument that they need at least a reasonable suspicion to approach and question him is simply incorrect. The police are able to make reasonable inquiries to the public at large. It would surely not be a prudent policy to limit a police officer's interaction with the public. In the case at bar, the evidence introduced at the suppression hearing demonstrates this was a consensual encounter. The testimony of all parties shows the officers and defendant had a polite conversation. It cannot be said defendant was coerced or intimidated in any way. Therefore, there was no seizure of defendant's person for fourth amendment purposes.
 
 
 15
 Furthermore, the evidence suggests that defendant voluntarily consented to the search of his luggage. United States v. Williams, 754 F.2d 672, 674 (6th Cir.1985). Although defendant testified that he did not give his voluntary consent, the district judge found his testimony not to be credible. The findings of a district court, with regard to the voluntariness of consent, will not be reversed unless clearly erroneous. United States v. Jones, 846 F.2d 358, 360 (6th Cir.1988) (Per Curiam). A review of the record demonstrates the district court's decision is not clearly erroneous. Defendant claimed the $12,000.00 was his, but denied knowledge of the heroin also in the suitcase. One wonders why someone would secretly place heroin into defendant's locked suitcase, but not remove the money. Such a scenario is ludicrous. It cannot be said the district judge's finding that the officers testimony was more credible and the district court's reliance on this testimony was clearly erroneous. Therefore, this court will not reverse the finding that defendant consented to the search.
 
 
 16
 Finally, it is not clear what defendant is seeking in his argument that his rights were somehow violated when the dog ripped open his suitcase. Apparently, defendant is complaining that the use of Cora was not the least intrusive method. By the time the training exercise occurred, however, defendant had already been arrested, his luggage had been searched and the heroin discovered. Thus, this court can conceive of no constitutional right which could have been violated. Furthermore, even if there were some constitutional violation, it would not mandate the suppression of the evidence already legally discovered. Therefore, this argument has no merit.
 
 V.
 
 17
 The Judgment and Commitment Order of the District Court is hereby AFFIRMED.