47 F.3d 1172
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Victor SUAREZ and Rogelio Campos, Defendants-Appellants.
 Nos. 94-5134, 94-5143.
 United States Court of Appeals, Sixth Circuit.
 Jan. 25, 1995.
 
 Before: MARTIN and BATCHELDER, Circuit Judges; and ENSLEN*, District Court Judge.
 PER CURIAM.
 
 
 1
 Victor Suarez and Rogelio Campos appeal their convictions for possession with intent to distribute marijuana, 21 U.S.C. Sec. 841(a)(1), and Campos appeals his conviction for use of a firearm during a drug trafficking offense, 18 U.S.C. Sec. 924(c). Suarez was sentenced to five years in prison, and three years supervised release. Campos was sentenced to consecutive terms of three and five years for counts I & II, respectively, and three years of supervised release. Both defendants timely appeal on two grounds: 1) that the district court erred by denying their motion to suppress evidence discovered during a search of the vehicle in which they were riding because the search violated their Fourth Amendment rights, and 2) that the court erred by charging the jury with a "deliberate ignorance" charge.
 
 
 2
 The arrest and convictions of Suarez and Campos arose out of events taking place during a traffic stop on August 29, 1992. On that day, Suarez and Campos were traveling near Memphis, Tennessee, heading eastbound on Interstate 40. Suarez was driving a white Chevrolet van with tinted windows and Texas plates. Campos was his only passenger. The van had been rented in Corpus Christi, Texas by someone other than Suarez or Campos, and Campos was the only extra driver listed on the rental agreement.
 
 
 3
 At approximately 1:30 p.m., Officer Hazelrig of the Shelby County Sheriff's Department's Interstate Interdiction Unit, a group of officers who receive special training in intercepting interstate drug traffic, was running "random radar" from his car parked in the median strip on I-40. Hazelrig had his radar turned on when the van Suarez was driving came by going sixty-four miles per hour in a fifty-five miles per hour zone. Hazelrig followed the van, signaling the driver to pull over, so that he could issue a citation to the driver. Suarez stopped the van. Hazelrig later testified that he did not remember noticing that the van had Texas plates before pulling it over, that he could not see inside the vehicle and did not notice that the driver was Hispanic until Suarez exited the vehicle.
 
 
 4
 Officer Hazelrig's testimony of the events occurring next is as follows:
 
 
 5
 Q: [W]hat happened once you stopped the van?
 
 
 6
 A: When I stopped the van, I got out of my car and started to walk up to the van. When I got just passed the rear of the car and I could see the driver's face in the mirror, so I motioned for him to step back with me. Sometime during this time, after I had passed the rear of the van and was probably maybe two maybe one-third or halfway up to the driver's door I got a whiff of marijuana. The driver opened--his window was down, so he opened the door and stepped back toward me....
 
 
 7
 Officer Hazelrig then asked Suarez to sit in the squad car, the normal procedure for the safety of both parties, while Hazelrig wrote out a warning ticket. While in the car, Hazelrig noticed that Suarez was "extremely nervous." Hazelrig noticed that Suarez's hands were clamped together, his knuckles were white, and that he was sweating profusely. Hazelrig testified that, though it was a hot day, the air conditioner was on in his car. Hazelrig believed Suarez was "exhibiting too much anxiety for such a relatively minor traffic stop."
 
 
 8
 While writing out the ticket, Hazelrig asked Suarez where he was going. Suarez answered he was going to Chicago. Hazelrig testified that he thought this was odd since heading east on I-40 was not the direct route to Chicago. Hazelrig then asked to see the registration, and Suarez said the van was rented and that the rental agreement was in the van. Hazelrig went back to the van to get the rental agreement. Campos was sitting on the passenger side when Hazelrig asked him for the rental agreement. While inspecting the rental papers, Hazelrig asked Campos where he was going. Campos replied he was going to Ohio. Hazelrig testified that:
 
 
 9
 I noticed that Mr. Suarez was not the renter and nor was he listed as an additional driver, and, as a matter of fact, he wasn't on the agreement anywhere. Mr. Campos was not the renter. Mr. Campos was listed...as an additional driver.
 
 
 10
 Hazelrig also testified that he noticed that the vehicle wasn't supposed to leave Texas under the terms of the rental contract.
 
 
 11
 At this point, Hazelrig's suspicions were aroused and he asked Suarez for permission to search the van. Suarez said that he couldn't give permission because the van wasn't his. Hazelrig then asked Campos for permission, and Campos gave the same answer. Hazelrig asked Campos to sit in his squad car with Suarez. Hazelrig testified that neither man was free to leave at this point.
 
 
 12
 Because he was on duty with the Interstate Interdiction Unit, Hazelrig had his trained narcotics dog, Bandit, in the squad car. Hazelrig decided to use Bandit to see if drugs might be present inside the van. Hazelrig took Bandit to the van and made a "first pass" around the exterior with Bandit. Hazelrig testified that this pass is done at "almost a dead run." Bandit did not alert to any contraband on the first pass. Hazelrig asked Suarez and Campos again for permission to search, which they denied. Hazelrig took Bandit to parts of the van he wanted Bandit to sniff, and Bandit "alerted" to contraband by scratching toward the back of the right sliding door of the van. Ten to twelve minutes had passed from the time Hazelrig stopped the van to the time of the canine sniff.
 
 
 13
 Hazelrig and another officer who had arrived at the scene, Officer Daniels, then conducted a full search of the van. They discovered approximately ninety-one pounds of marijuana in the back of the van, a gun under the front passenger seat, and a small bag of marijuana sitting on the front console near the driver's seat. Suarez and Campos were arrested and made no further statements.
 
 
 14
 Both Suarez and Campos were charged with possession with the intent to distribute marijuana. 21 U.S.C. Sec. 841(a)(1). In addition, Campos was charged with using a firearm in relation to a drug trafficking crime. 18 U.S.C. Sec. 924(c). Both Suarez and Campos filed motions to suppress the evidence found in the van. After a hearing, the magistrate's report concluded that the officers had probable cause to conduct a warrantless search of the van. Chambers v. Maroney, 399 U.S. 42, 51-52 (1970). The magistrate concluded:
 
 
 15
 [A]fter Officer Hazelrig smelled marihuana emanating from the van, after he received conflicting statements from Suarez and Campos as to their destination, and after his drug-sniffing dog made a positive indication that there were drugs in the van, Officer Hazelrig had probable cause to believe that the van contained evidence of crime, and, because of exigent circumstances (involving the likely disappearance of the vehicle), could search the van without a search warrant. Chambers v. Maroney, 399 U.S. 42, 51-52 (1970); Carroll v. United States, 267 U.S. 132, 158059 (1925).
 
 
 16
 As to the roadside statements made by Suarez and Campos, the magistrate concluded that Miranda warnings were not required. Berkemer v. McCarty, 468 U.S. 420, 440 (1984) (no warnings required for brief roadside questioning of a motorist detained pursuant to a routine traffic stop).
 
 
 17
 Suarez and Campos objected to the magistrate's report, claiming that Hazelrig stopped them on a pretext. They claim they were going fifty-five miles per hour and that Hazelrig stopped them because they were Hispanic and because the van had Texas plates. They also claim that Hazelrig did not smell marijuana, and that the fact that Bandit did not alert on the first pass proves this. After reviewing the defendants' objections to the magistrate's report, the district court stated that, while it didn't find Hazelrig's statement that he smelled marijuana "particularly credible," the district court felt that the other factors which excited Hazelrig's suspicion were sufficient to justify the canine sniff. The district court, therefore, held that the defendants' inconsistent answers, nervousness and rental of the van by a third person provided the reasonable suspicion to justify the detention for the canine sniff.
 
 
 18
 When reviewing a district court's denial of a motion to suppress evidence, this Court must consider the evidence in the light most favorable to the government. United States v. Garza, 10 F.3d 1241, 1245 (6th Cir. 1993). The denial of the "'motion to suppress will be affirmed on appeal if proper for any reason."' Id. (quoting United States v. Barrett, 890 F.2d 855, 860 (6th Cir. 1989)). Furthermore, this Court "'must accept the finding[s] of fact upon which the district court relied in dealing with suppression of evidence unless those findings are clearly erroneous."' Id. (quoting United States v. French, 974 F.2d 687, 691 (6th Cir. 1992), cert. denied, 113 S. Ct. 1012 (1993)). However, the district court's application of the facts to the law is subject to de novo review. Id.
 
 
 19
 The central issue in this case is whether Hazelrig's suspicions were reasonable and whether they justified the scope of the investigatory detention, including the narcotics sniff. First, this Court has held that, so long as a police officer has probable cause to believe a traffic violation has occurred or is occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment. United States v. Ferguson, 8 F.3d 385 (6th Cir. 1993). This Court in Ferguson said that such a stop is constitutional "regardless of whether this was the only basis or merely one basis for the stop." Id. at 391. The district court's finding that Hazelrig believed the defendants to have violated the speed limit is not clearly erroneous. Therefore, Hazelrig had probable cause to stop the defendants.
 
 
 20
 From the time that Hazelrig pulled Suarez and Campos over, they were "seized" for purposes of the Fourth Amendment because they were not free to leave. However, not every temporary seizure violates the Fourth Amendment. Florida v. Royer, 460 U.S. 491, 498-99 (1983) (investigative detention must be supported by reasonable articulable suspicion and "must be temporary and last no longer than is necessary to effectuate the purpose of the stop."); see also United States v. Pino, 855 F.2d 357, 361, 363 (6th Cir. 1988), amended, 866 F.2d 147 (6th Cir. 1989), cert. denied sub nom, Llera v. United States, 493 U.S. 1090 (1990) (citing Terry v. Ohio, 392 U.S. 1 (1968)). Certainly, Hazelrig was justified in stopping Suarez and Campos, based on the traffic violation, for a reasonable amount of time, in order to investigate matters concerning the traffic violation--the identity of the occupants, whether Suarez had a valid driver's license, ownership of the van. The final issue for us to consider is whether Hazelrig was also justified in detaining Suarez and Campos for the ensuing narcotics sniff.
 
 
 21
 Our task is to determine whether the canine sniff was supported by reasonable suspicion and lasted no longer than necessary. We agree with the district court that the totality of the circumstances was sufficient to rouse reasonable suspicion in a trained drug interdiction officer, like Officer Hazelrig, and do not find clear error in this regard. United States v. Winfrey, 915 F.2d 212, 217 (6th Cir. 1990), cert. denied, 498 U.S. 1039 (1991); United States v. Knox, 839 F.2d 285, 290 (6th Cir. 1988), cert. denied, 490 U.S. 1019 (1989); United States v. Williams, 754 F.2d 672 (6th Cir. 1985). As to the length of the detention, it appears that the amount of time that passed between Hazelrig's questioning of Campos concerning the ownership of the van and the narcotics sniff was very short because Hazelrig had his narcotics dog, Bandit, with him at the time of the traffic stop.
 
 
 22
 A positive canine sniff test can in some circumstances provide probable cause to search a vehicle. United States v. Knox, 839 F.2d 285 (6th Cir. 1988), cert. denied, 490 U.S. 1019 (1989). In this case, the defendants did not raise any objections to the dog's ability to smell marijuana. Because the detention for the narcotics sniff was based upon reasonable suspicion and was temporary in nature, and because Hazelrig had probable cause to search the van, there was no error in denying the motion to suppress.
 
 
 23
 In reviewing a trial court's charge to the jury, we ask whether the jury charge, taken as a whole, fairly and accurately submitted the issues and applicable law to the jury. United States v. Martin, 740 F.2d 1352, 1361 (6th Cir. 1984). "On appeal, jury instructions are reviewed as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision." United States v. Montgomery, 980 F.2d 388, 393 (1992) (citing Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1010-11 (6th Cir. 1987)).
 
 
 24
 The jury instruction at issue was as follows:
 
 
 25
 I want to explain something more about a defendant's knowledge. No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced that the defendants deliberately ignored a high probability that they were carrying marijuana in the van, then you may find--you may find that they knew that they were carrying marijuana.
 
 
 26
 But to find this, ladies and gentlemen, you must be convinced beyond a reasonable doubt that the defendants were aware of a high probability that they were carrying marijuana, and that the defendants deliberately closed their eyes to what was obvious. Carelessness or negligence or foolishness on their part is not the same as knowledge, and is not enough to convict. This is, of course, for you to decide.
 
 
 27
 Suarez and Campos raise several objections to this jury instruction, basically arguing that the instruction has the potential to confuse the jury and permit conviction on a "should have known" or negligence theory of criminal liability. However, neither cites any Sixth Circuit authority for his argument.
 
 
 28
 This Court has repeatedly upheld a district court's knowledge instruction "on the basis that it prevents a criminal defendant from escaping conviction merely by deliberately closing his eyes to the obvious risk that he is engaging in unlawful conduct." United States v. Holloway, 731 F.2d 378, 387-88 (6th Cir.), cert. denied, 469 U.S. 1021 (1984) (citations omitted). We believe that the district court's instruction in the instant case fairly and accurately submitted the knowledge issue to the jury and instructed the jury that liability must be based on a deliberate act of defendants to ignore the high probability that they were engaging in a criminal act. Based on the foregoing, we conclude that the jury instruction was proper.
 
 
 29
 The judgment of the district court is hereby AFFIRMED.
 
 
 30
 ENSLEN, District Judge*, dissenting.
 
 
 31
 I believe that the district court erred in holding that the facts the facts relied upon by the court supported a conclusion that Officer Hazelrig had reasonable suspicion for having his drug detection dog sniff the rented van that was used by defendants. Consequently, the district court erred in denying defendants' motions to suppress the marijuana evidence that was found and seized from the van as a result of the canine sniff and the subsequent search of the van.
 
 
 32
 As noted by the majority, while this Court must accept the district court's findings of fact unless they were clearly erroneous, the district court's application of the facts to the law in denying a motion to suppress is subject to de novo review. United States v. Garza, 10 F.3d 1241, 1245 (6th Cir. 1993).
 
 
 33
 Here, in reviewing defendants' objections to the Proposed Findings of Fact, Proposed Conclusions of Law, and Recommended Disposition provided by the magistrate judge who conducted the suppression hearing concerning defendants' motions, the district court found that Officer Hazelrig's testimony that he smelled marijuana was not "particularly credible," disagreeing with the magistrate judge on this fact. Nevertheless, the district court found that other facts established at the hearing were sufficient to find that Officer Hazelrig had reasonable articulable suspicion that the van would contain evidence of a drug-related crime which justified the canine sniff.
 
 
 34
 The evidence relied upon by the district court in finding reasonable suspicion consisted of the following:
 
 
 35
 (1) Defendant Suarez and Defendant Campos gave inconsistent answers to Officer Hazelrig about their destination -- Campos said he was going to Ohio to visit a relative, and Suarez told the officer they were going to Chicago even though the van was headed east rather than north toward Chicago;
 
 
 36
 (2) Suarez, while he was sitting in the back of the police car, appeared to Officer Hazelrig to be extremely stressed and profusely sweating; and
 
 
 37
 (3) the van had been rented to a third person who was not present when the van was stopped by police, and the rental agreement included a condition that the van was not to leave the state of Texas.
 
 
 38
 Although the canine sniff was a relatively minimal intrusion, in that it was conducted within a few minutes, such a search nevertheless requires that the totality of the circumstances indicate facts sufficient to rouse reasonable suspicion on the part of the officer. United States v. Winfrey, 915 F.2d 212, 217 (6th Cir. 1990), cert. denied, 498 U.S. 1039 (1991); United States v. Knox, 839 F.2d 285, 290 (6th Cir. 1988), cert. denied, 490 U.S. 1019 (1989).
 
 
 39
 The facts found by district court to sufficiently indicate that a reasonable suspicion existed that justified the canine sniff simply do not rise to that level. Defendant Suarez' nervousness or stress while sitting in a police car is not likely an unusual reaction by an individual who has been stopped for speeding, and who was driving a rented van even though he was not listed on the rental agreement as an alternate driver. The inconsistent answers about destination are curious, but they hardly are indicative of criminal behavior, or, more specifically, drug possession or trafficking. Finally, the fact that the van was rented in another person's name and was being driven outside the state of Texas contrary to the rental agreement may have been some evidence that the van may have been stolen, but it was not evidence that a drug offense was being committed. Furthermore, defendant Campos, who was the passenger in the van, was listed on the rental agreement as an alternate driver, which would negate the conclusion that the van was stolen.
 
 
 40
 The magistrate judge concluded that the canine sniff was justified because Officer Hazelrig had testified to having actually smelled marijuana emanating from the van prior to having the dog conduct the sniff. The district court, however, determined from the record at the suppression hearing that Officer Hazelrig's testimony was not "particularly credible," but proceeded to find that reasonable suspicion was still present as based upon the facts just discussed. I believe that the facts as found by the district court are not sufficient to establish that there was reasonable suspicion justifying the canine sniff. The facts, although curious, do not provide enough evidence to believe that the van contained evidence of criminal activity that a trained drug detection dog would find.
 
 
 41
 The motion to suppress should have been granted by the district court and the marijuana and weapons seized from the van as a result of the search should not have been admitted at trial. Without the marijuana evidence, there would have been insufficient evidence to arrest defendants on the drug charges or to support their convictions at trial. Because the convictions should have been reversed, I must respectfully dissent.
 
 
 
 *
 Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation