UNITED STATES of America, Appellee,

v.

Jesse Ausbin BROWN, Appellant.

No. 92–2248.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1992.

Decided April 2, 1993.

Mark F. Marshall, Rapid City, SD, argued, for appellant.

Diana Jo Ryan, Asst. U.S. Atty., Rapid City, SD, argued, for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Jesse A. Brown was convicted of two counts of sexual acts with a minor and was sentenced to 235 months in prison. Brown appeals his conviction on the ground that the district court erroneously found that an inculpatory statement made by Brown was admissible at trial. Brown appeals his sentence on the ground that the district court incorrectly applied the sentencing guidelines. We affirm the conviction, but we remand for resentencing.

## I.

In the spring of 1991, Brown, a thirty-eight-year-old Caucasian male transient, arrived in Pine Ridge, South Dakota, on the Pine Ridge Indian Reservation. While in Pine Ridge, he stayed at the residence of Gary and Mary Moore. On July 4, 1991, Brown went to a softball game at Wakpamni Lake, which is approximately thirty minutes from Pine Ridge. He returned to Pine Ridge in a car with seven other people: three adults were in the front seat; Brown, two other adults, and two eight-year-old girls were in the back seat. The two girls sat on Brown's lap, one on each knee.

On July 7, the two girls and their mothers complained to the Pine Ridge Police Department that Brown had touched the two girls between their legs during the drive back from Wakpamni. Later that day, Rick Esselbach, an FBI Special Agent, and Barney White Face, a Criminal Investigator for the Oglala Sioux Tribe, went to the East Ridge Housing area in Pine Ridge to look for Brown, whom they found in the front yard of the Doris Poor Bear residence.

Upon approaching Brown, Esselbach introduced himself and White Face. Esselbach informed Brown that they were investigating allegations that Brown had sexually abused two young girls. Esselbach advised Brown that he was not under arrest but that they wanted to get his side of the story if he wanted to be interviewed. Brown indicated that he wanted to talk with the officers so that he could get to the bottom of the matter. The two officers then followed Brown into the Poor Bear house and back into a bedroom, which Brown stated was his room.

Once they were in the bedroom, Esselbach told Brown that two girls had complained that he had sexually abused them on July 4 during a trip from Wakpamni to Pine Ridge. Brown initially denied having had any sexual contact with the two girls. Esselbach then informed Brown that the girls had given statements to the police and asked why the girls would lie. Esselbach asked Brown if he could have accidently touched the girls. Brown answered that he may have unintentionally touched the vagina of one of the girls while attempting to make himself comfortable in the cramped back seat of the car. After Esselbach explained to Brown in more detail the statements the girls had given, Brown admitted having intentionally touched one girl's vagina. He confessed that he had reached down the girl's pants with his left hand, had rubbed her vagina area for about two minutes, and had slipped one of his fingers inside her vagina.

Brown was indicted on two counts of sexual abuse of a minor. Count I charged him with aggravated sexual abuse of a person who had not attained the age of twelve years, in violation of 18 U.S.C. § 2241(c). Count II charged him with abusive sexual contact with a person who had not attained the age of twelve years, in violation of 18 U.S.C. § 2244(a)(1).

Prior to trial, Brown made a motion to suppress his inculpatory statement on the

ground that he had not been given the *Miranda* warnings prior to making the statement. After conducting a motion/suppression hearing, the district court denied the motion, finding that Brown had not been in custody when he made the statement to the officers.

At trial, Brown renewed his objection to the admission of his incriminating statement, and the district court once again found that the statement was admissible.

The district court sentenced Brown to 235 months in prison pursuant to the sentencing guidelines. The base offense level for aggravated sexual abuse, as charged in Count I, is twenty-seven. U.S.S.G. § 2A3.1(a). The offense level was increased by four levels because the victim was under the age of twelve, *id.* § 2A3.1(b)(2), and by two more levels because Brown had obstructed justice by lying to the district court and the probation office, *id.* § 3C1.1. Accordingly, the adjusted offense level for Count I was thirty-three.[1] Brown's criminal history score was fifteen points, placing him in criminal history category VI. An offense level of thirty-three and a criminal history of VI produced a sentencing range of 235 to 293 months of imprisonment.

## II.

Brown argues that his conviction should be reversed because the district court erred in holding that his inculpatory statement was admissible. Brown maintains that the court incorrectly found that he was not in custody when he made the statement. We review the district court's finding under the clearly erroneous standard. *See, e.g., Carlson v. State,* 945 F.2d 1026, 1028 (8th Cir.1991) (citing *United States v. Griffin,* 922 F.2d 1343, 1347 (8th Cir.1990)). "We will affirm the finding unless it is unsupported by substantial evi-

dence in the record, is based on an erroneous interpretation of the law, or we are left with a firm conviction that a mistake has been made." *Id.* at 1028–29 (citing *United States v. Jorgensen,* 871 F.2d 725, 728 (8th Cir.1989)).

*Miranda* warnings must be given prior to questioning whenever an individual is in custody. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). "An individual is 'in custody' when he has been formally arrested or his freedom of movement has been restrained to a degree associated with a formal arrest." *United States v. Goudreau,* 854 F.2d 1097, 1098 (8th Cir.1988) (citing *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam)). In *United States v. Griffin* we enumerated six indicia of custody:

(1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official request to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

*Id.,* 922 F.2d at 1349. The presence of the first three indicia tends to mitigate the existence of custody at the time of questioning; the presence of the last three indicia aggravate the existence of custody. *Id.*

---

1. The adjusted offense level for Count II was 18: the offense level for abusive sexual contact with a person under 12 years of age is 16 levels, U.S.S.G. § 2A3.4(b)(1); two levels were added for obstruction of justice. Because Count II's adjusted offense level of 18 is more than nine levels less serious than Count I's adjusted offense level of 33, Count II was not used to raise the total offense level. If an additional count is nine or more levels less serious than the count with the highest offense level, the additional count cannot be used to increase the offense level; the count may be used only as a reason for sentencing at the higher end of the applicable sentencing range. *Id.* § 3D1.4.

■ Applying the *Griffin* indicia to the facts of this case, we find that all of the mitigating and none of the aggravating indicia were present during Brown's interview.

(1) When Esselbach initially approached Brown outside the Poor Bear residence, he specifically advised Brown that he was not under arrest. Esselbach also informed Brown that the questioning was voluntary; he told Brown that the officers wanted to get Brown's side of the story if Brown was willing to talk to them.

(2) Brown was free to move around during the entire interview. The officers did not handcuff Brown or physically restrain him in any other manner. Furthermore, both officers testified that the bedroom door had remained open and unblocked throughout the interview and that Brown could have ended the interview and left the room at any time.

(3) Brown voluntarily initiated contact with the officers. Brown was inside the Poor Bear residence when he observed Esselbach and White Face leaving the neighboring Moore residence. Upon learning that they were law enforcement officers, Brown exited the Poor Bear home and presented himself to the officers because he believed that they were looking for him. Furthermore, Brown voluntarily acquiesced to the interview. When Esselbach asked Brown if he was willing to talk to the officers, Brown responded: "I'd like to get to the bottom of this, too, myself because I don't know what's going on." When asked at the suppression hearing if he felt compelled to talk to the officers, Brown testified: "[T]he only reason I talked to them is because I wanted to get to the bottom of it because I didn't understand ... why they were saying that I did something that I didn't do. So I figured that if I talked to them, maybe we could get it straightened out...."

(4) The officers did not employ any strong-arm tactics. During the forty-minute interview, Esselbach and White Face did not yell at Brown, threaten him, or employ any deceptive stratagems, such as the good-cop, bad-cop routine. In fact, White Face remained silent until the end of the interview, when he asked Brown a few personal data questions. The absence of any coercive tactics is a factor indicating that a reasonable person would not have believed that he was under formal arrest. *Griffin*, 922 F.2d at 1351.

(5) The atmosphere of the questioning was not police dominated. In making this determination, we examine such factors as the length and place of the interview. *Griffin*, 922 F.2d at 1352. As noted earlier, the interview lasted only forty minutes. The interview took place at the Poor Bear residence, a place where Brown could feel comfortable, as opposed to a police-operated facility, such as a jail. *See United States v. Goudreau*, 854 F.2d 1097 (8th Cir.1988) (interview held in building housing defendant police officer's chief of police and not in an FBI facility). When an interview is conducted at a site not normally controlled by law enforcement, we also consider whether the officers took control of the site and persons present there. *Griffin*, 922 F.2d at 1352. In addition to Brown, two individuals were present in the Poor Bear house when the officers first entered it. Neither Esselbach nor White Face instructed these individuals to do, or not do, anything. The officers merely entered the house and followed Brown into the bedroom.

(6) Brown was not arrested at the end of the interview. In fact, Brown was not even instructed to stay in the Pine Ridge area. In concluding the interview, Esselbach informed Brown that the U.S. Attorney's office would decide whether to prosecute. Esselbach asked Brown whether he would let the officers know where he was going if he left the Pine Ridge area so that they could contact him if they needed to do so. Brown was not arrested until five weeks later on August 15, 1991, after further evidence and an indictment had been obtained.

Having found that all of the mitigating and none of the aggravating indicia of custody were present when Brown was interviewed, we conclude that the district court did not clearly err in holding that Brown

had not been in custody during his questioning.

## III.

We turn to Brown's argument that the case should be remanded for resentencing because the district court erroneously applied the sentencing guidelines. As mentioned above, the district court sentenced Brown to 235 months in prison—the lower limit of the sentencing range. At the sentencing hearing, the district court raised the matter of the government's objection to paragraph 84 of the presentence report, which suggested that the court might wish to consider a downward departure under section 5K2.0 of the guidelines on the ground that Brown's behavior may have fallen "somewhere between aggravated sexual abuse [the charge on which Brown was convicted in Count I] and aggravated sexual contact [sic]," with the result that the applicable guideline range may have overstated Brown's criminal behavior. The district court then stated:

> I have examined that statement by the probation officer and the objection by the Government, and also have examined Guideline 5K2.0, and I do not believe that the Sentencing Commission did not take into consideration in the construction and promulgation of the guidelines the variance between the two statutes; that is, between the conduct which is required under 2241(c) and 2244(a)(1). It appears to me that the Commission was well aware of the statute, and I accordingly do not wish to exercise any discretion, which I may otherwise have had to depart downward from the guidelines based upon the suggestion contained in paragraph 84.... The Court believes, therefore, that the guidelines adequately set forth the offense conduct and the applicability of the guidelines, and the Court finds no compelling reason for the Court to exercise a discretion to carve out a departure based upon the subtleties of the offense conduct pointed out by the probation officer.

Transcript of Sentencing, p. 4–5 (May 13, 1992).

The district court then went on to examine the offense level computation. After considering the sentencing factors set forth in 18 U.S.C. § 3553(a), the court determined that the applicable sentence would be the minimum sentence provided by the guidelines, 235 months. After engaging in a colloquy with defense counsel about the nature and extent of the conduct that resulted in Brown's conviction, the district court expressed some reservations about the length of the sentence that it was required to impose under the guidelines, stating:

> Quite frankly, I have given much consideration to this sentence, which as my note indicated, is a 20–year sentence. 240 months, of course, would be the 20–year sentence. This is just short of 20 years. It's very difficult for me to believe that this is the type of conduct which warrants a 20–year sentence. I understand the—I think I understand the guidelines, but if the Court is going to apply the guidelines to provide for a sentence based upon what I consider to be undue proportionality, it would have to be in the context of a departure downward....
>
> ... I would think absent the guidelines that I would fashion a sentence somewhere in the range of 10 to 15 years, because parole has been abolished.... There's been no motion for downward departure by the Government and, quite frankly, I am unable to articulate any facts which would support a downward departure based upon proportionality.
>
> . . . .
>
> ... Absent then any motion for downward departure, I would, of course, urge that an appeal of this sentence be filed—notice of appeal be filed within 10 days and this matter be decided upon appeal.
>
> . . . .
>
> I believe that the Government should make a motion for a downward departure in this case, but I'm not sure that the Government will.

Transcript of Sentencing, p. 15–17 (May 13, 1992).

After the government stated that there were no grounds for a downward departure, the district court proceeded to impose sentence.

Under 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0, a sentencing court has discretion to depart from the guideline range on its own motion. *See, e.g., United States v. Garlich*, 951 F.2d 161, 163 (8th Cir.1991); *United States v. Evidente*, 894 F.2d 1000, 1003 (8th Cir.), *cert. denied*, 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990). A motion for downward departure from the government is necessary only when the departure is pursuant to U.S.S.G. § 5K1.1 for a defendant's substantial assistance to the government. *See United States v. Kelley*, 956 F.2d 748, 750–57 (8th Cir.1992) (en banc) (holding that a motion from the government is a prerequisite to departure under § 5K1.1); *United States v. Justice*, 877 F.2d 664, 666–67 (8th Cir.) (same), *cert. denied*, 493 U.S. 958, 110 S.Ct. 375, 107 L.Ed.2d 360 (1989).

The district court's statements of its reasons for not departing downward under section 5K2.0 are ambiguous. On the one hand, the court seems to be saying that it found no reason to exercise its discretion to depart under that provision of the guidelines. On the other hand, the court several times refers to the absence of a motion for departure by the government, indicating that the court believed that the existence of such a motion was a prerequisite to its authority to depart under section 5K2.0. It could be argued, we suppose, that the court may have been soliciting a motion from the government under section 5K1.1, but such a reading of the sentencing transcript is foreclosed by the total absence of any evidence that Brown provided any assistance to the government, let alone substantial assistance. Indeed, as indicated above, the district court enhanced Brown's offense level by two points because Brown had obstructed justice. The court's reference to a motion by the government, then, must have been in relation to section 5K2.0. Because no motion is required under that provision, we conclude that Brown's sentence was imposed as a result of an incorrect application of the sentencing guidelines, and we therefore vacate the sentence and remand for resentencing. 18 U.S.C. § 3742(f)(1). In doing so, we of course do not suggest what course the district court should take with respect to a downward departure. *United States v. Whitetail*, 956 F.2d 857, 863 (8th Cir.1992); *United States v. Brown*, 903 F.2d 540, 545 (8th Cir.1990).

At oral argument Brown contended that his criminal history score overrepresents the seriousness of his criminal history. The record does not establish that Brown raised this argument in the district court, and accordingly we do not address it here. We leave it to the district court to consider this issue upon remand if Brown elects to raise it during the resentencing proceedings.

The conviction is affirmed. The sentence is vacated, and the case is remanded to the district court for resentencing.