**620**

UNITED STATES of America, Plaintiff,

v.

Robert L. ROTH, Defendant.

No. 4:CR93–3054.

United States District Court,
D. Nebraska.

Feb. 14, 1994.

Hal W. Anderson, John Stephens Berry, Berry, Anderson, Creager & Wittstruck, Lincoln, NE, for defendant.

Bruce W. Gillan, U.S. Atty., Paul D. Boeshart, Asst. U.S. Atty., Lincoln, NE, for plaintiff.

**MEMORANDUM AND ORDER ON OB-JECTION TO REPORT AND REC-OMMENDATION AND DEFEN-DANT'S MOTION TO SUPPRESS**

URBOM, Senior District Judge.

On January 7, 1994, United States Magistrate Judge David L. Piester recommended that the defendant's motion to suppress be granted. The government has objected.

The basis of the recommendation was that the government failed at the evidentiary hearing to carry by a preponderance of the evidence its burden that the defendant made a statement voluntarily on November 23, 1992, to Nebraska State Patrol Investigator Al Walton.

The factual issue is whether the interviewer, Walton, told Roth that his statement would not be used against him.

Roth testified at the hearing before the magistrate judge that during the course of the first five or ten minutes (Transcript of Hearing on Motion to Suppress, 31:7–8) of the interview Roth made no statement, except that:

"... I didn't have nothing, really, to hide, that I didn't have nothing to do with anything like that [drug dealing], and I—I didn't know why I was really there."

(Tr. 32:3–6).

Walton said that for the first ten or fifteen minutes Roth was "somewhat hesitant to answer." (Tr. 23:21–23.)

Roth then testified as follows:

"Q. Okay. Was there a time when you changed your mind and went ahead and—went ahead and made a statement?

A. Yes.

Q. When was that?

A. That was after we'd talked for a little while and he said to me, he said I know better than that, this and that, and I said—he said well, this ain't going to be used against you or anything in court, just—it's just to verify what Dave Munter said, and that was what it—went on, so then I said what I said to him.

Q. Did you believe him when he said it wouldn't be used against you?

A. He said it wasn't taped or nothing, that it was just between me and him, and he just wanted to verify it.

Q. Would you have made a statement if he hadn't told you it wasn't going to be used in court?

A. No, I wouldn't have made a statement."

(Tr. 32:11, 33:5).

Walton's testimony was entirely consistent with Roth's, except with respect to whether Walton told Roth that the statement would not be used against him. Walton's testimony on that subject was:

"Q. Did you tell him that the statements that he made could be used against him?

A. I don't recall telling him that.

Q. Did you tell him that the statements he made would not be used against him?

A. I did not tell him that."

(Tr. 15:7–12).

"Q. And did you tell him that what he was going to say would be used against him?

A. I did not tell him that.

Q. ... Did the subject of whether or not what he was going to say would be used against him ever come up, to your recollection?

A. I don't know if he talked specifically about his statements, but he asked what was going to happen to him.

Q. Okay. What did you tell him?

A. I told him that I would take any information he provided to Mr. Gillan.

Q. And did you tell him that the purpose you would take it to Mr. Gillan would be to verify Munter's statements?

A. I told him that the purpose that I would take it to Mr. Gillan would be to determine if Mr. Roth was to be a defendant or a witness in the federal investigation."

(Tr. 22:25, 23:20).

"Q. And did you and the defendant discuss the fact that his statement at that time was being used for verification purposes?

A.  I told him that was part of the purpose for interviewing him.

Q.  Did you say that part of the other purpose might be to use against him in court?

A.  I did not say that."

(Tr. 24:20, 25:2).

■  On de novo consideration I conclude that, as the magistrate judge did, the evidence was equal on the factual issue of whether Roth was told that the statement would not be used against him.  On the basis of the evidence presented the credibility of the two, Walton and Roth, was equal.  Walton, an experienced investigator, had immediate access where he was to a recorder, so that the conversation could have easily been taped, but he decided not to use it.  He made notes of the conversation, but chose to destroy them immediately afterward.  That tends to diminish his credibility to some degree.  Roth has been convicted of two prior felony offenses.  That tends to diminish his credibility to some degree.  Accordingly, contrary to the government's position, I do not find that the government has met its burden of showing that the statement of Roth was voluntarily made.

■  The government then argues that the magistrate judge should have received in evidence certain cross-examination questions by the government counsel of Roth.  Those questions essentially asked whether the declarations noted by the investigator in the statement taken from Roth—which declarations implicated Roth in the criminal activity with which he now is charged—were true.  Objections to those questions were sustained.  I conclude that they were rightly sustained.

Rule 611 of the Federal Rules of Evidence requires that cross-examination be limited "to the subject matter of the direct examination and matters affecting credibility of the witness."  The questions put to Roth on cross-examination at the evidentiary hearing were neither.  Differing from facts in *United States v. Williams,* 754 F.2d 672 (6th Cir. 1985), pointed to by the government here,

the direct examination did not touch the subject of any of the essential elements of the crime with which the defendant is charged.  The direct examination dealt only with the circumstances of the taking of the statement of Roth by Walton.  Furthermore, the questions on cross-examination about whether the defendant was involved with drugs—the essence of the charges now against him—did not go to Roth's credibility.  The isolated matter of whether Roth was involved in drugs does not satisfy Rule 609, because there has been no conviction for that crime, or Rule 608, because it does not refer to character for truthfulness or untruthfulness.  *United States v. Williams, supra,* does not fit the present case because the cross-examination at issue in that case went to the defendant's credibility "because they were directly related to Williams' earlier testimony denying that he had shown any signs of nervousness at the time of his original apprehension."  *Id.* at 676.  The signs of nervousness at the time of his original apprehension related to the subject of his knowledge about his carrying drugs at that moment.  That distinguishes the *Williams* case.

IT IS ORDERED that:

1.  the objection to report and recommendation, filing 17, is denied;  and

2.  the motion to suppress statement, filing 8, is granted.

## REPORT AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

Pending before the court is defendant's motion to suppress.  (Filing 8).  For reasons discussed more fully below, I shall recommend the motion be granted.

On November 23, 1992 defendant was interviewed by Nebraska State Patrol Investigator Al Walton.  The motion concerns statements made at that interview.  Approximately one week before the interview Walton contacted defendant by telephone and set up an appointment.  Pursuant to that conversation, defendant [1] met Walton at the State

---

1.  Defendant is a 41 year old farmer who also paints and sandblasts.  He is a high school graduate and has twice been convicted of felonies.

Patrol Headquarters in Norfolk, Nebraska. The parties agree that defendant voluntarily went to the headquarters for the interview. Walton met defendant near the front desk and escorted him to a polygraph room inside the headquarters. That room is 12′ × 12′ with one door and no windows. Walton wore civilian clothes and was unarmed. Walton testified that he was uncertain if the door to the room was open or closed. No persons other than Walton and defendant were present in the room during the interview. During that interview defendant made statements which he seeks to suppress through this motion. The motion essentially raises two grounds: 1) violation of *Miranda;* [2] and 2) the statement was not given voluntarily.[3] I shall discuss the claims separately.

## MIRANDA WARNINGS

■ Defendant alleges he was in police custody at the State Patrol Headquarters when he gave the incriminating statement but was not informed of his constitutional rights as required by *Miranda, supra.* "*Miranda* warnings are required only when a suspect is in custody and is about to be interrogated." *United States v. Caldwell,* 954 F.2d 496, 499 (8th Cir.) (citing *Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980)), *cert. denied,* —— U.S. ——, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992). "Warnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.'" *Jenner v. Smith,* 982 F.2d 329, 335 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993), quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 715, 50 L.Ed.2d 714 (1977).

In this case, defendant voluntarily went to the patrol headquarters for the interview. Despite being told he was free to end the

questioning at any time and leave the headquarters, he answered Walton's questions. Although the interview took place at the patrol headquarters, I cannot conclude the atmosphere was police dominated. Walton was not dressed in a police uniform, was unarmed, and sat alone when speaking with defendant. At the end of the interview, defendant left headquarters without being arrested. Based on these considerations, I conclude defendant was not in custody when he gave the statements at issue. *See United States v. Brown,* 990 F.2d 397, 399 (8th Cir. 1993); *United States v. Griffin,* 922 F.2d 1343, 1349 (8th Cir.1990). Thus, *Miranda* warnings were not required. This claim is not a sufficient basis for suppression of the statement.

## VOLUNTARINESS

■ It has long been established that a statement of a defendant, in order to be admissible under the Fifth Amendment, must be voluntary, "that is, [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Bram v. United States,* 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897) (*quoting* 3 Russell, *Crimes* 478 (6th ed.)). As the Supreme Court stated, certain methods of gathering incriminating statements "are so offensive to a civilized system of justice that they must be condemned." *Miller v. Fenton,* 474 U.S. 104, 109, 106 S.Ct. 445, 449, 88 L.Ed.2d 405 (1985). The question in the present case, as in any other such case, is whether law enforcement officials engaged in any coercive misconduct or overreaching, *Colorado v. Connelly,* 479 U.S. 157, 163–64, 107 S.Ct. 515, 519–20, 93 L.Ed.2d 473 (1986); *United States v. Rohrbach,* 813 F.2d 142, 144 (8th Cir.),

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** I note that the motion purports to suppress "any and all statements" made by defendant to any officer "including but not limited to the statements of November 23, 1992...." The hearing elicited evidence only on the November 23 interview. Thus, this report and recommendation concerns only statements made during

that interview. Further, the motion purports to contain five bases for suppression. Counsel for the defendant admitted that paragraph 4 of the motion was inapplicable to this action. It further appears that the *Miranda* claim is related to that raised in paragraph 4. Although counsel did not expressly abandon the *Miranda* claim, he did not seek to present evidence on the claim at the hearing.

*cert. denied,* 482 U.S. 909, 107 S.Ct. 2490, 96 L.Ed.2d 381 (1987), such that the defendant's statements were not freely self-determined, but rather the product of an overborne will. *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961).

The Eighth Circuit has set forth the applicable test as follows:

> Voluntariness remains the standard for the admissibility of confessions. *See, Brown v. Mississippi,* 297 U.S. 278, 285, 56 S.Ct. 461, 464–65, 80 L.Ed. 682 (1936) (the use of involuntary confessions violates due process). The test used to apply this constitutionally based standard is whether, in light of the totality of circumstances, pressures exerted upon the suspect have overborne his will. *Haynes v. Washington,* 373 U.S. 503, 513–14, 83 S.Ct. 1336, 1343–44, 10 L.Ed.2d 513 (1963); *see also Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961) (suspect's will is overborne when a confession is not the product of a free and unconstrained choice). The Eighth Circuit has also embraced the "overborne will" doctrine. *See Rachlin v. United States,* 723 F.2d 1373, 1377 (8th Cir.1983). Two factors must be considered in the voluntariness inquiry: the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess. *Colorado v. Connelly,* 479 U.S. 157, 159–163, 107 S.Ct. 515, 518–19, 93 L.Ed.2d 473 (1986).

*United States v. Jorgensen,* 871 F.2d 725, 729 (8th Cir.1989). As the court noted in *United States v. Wilson,* 787 F.2d 375 (8th Cir.1986), *cert. denied,* 479 U.S. 857, 107 S.Ct. 197, 93 L.Ed.2d 129 (1986):

> In this analysis the court employs a flexible totality of the circumstances approach, considering the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused.

*United States v. Wilson,* 787 F:2d at 381.

The interview was completed in 30 minutes after which defendant left the headquarters. Both the defendant and Walton testified that defendant was informed that he did not have to be interviewed and could leave the building if he wished. They both also testified that Walton informed defendant that one purpose of the interview was to determine the validity of a statement made by Mr. Munter, a former employee of defendant's. They both further testified that for the first ten to fifteen minutes, defendant was reluctant to discuss any involvement in the federal investigation underlying the interview. However, after that time defendant did make statements regarding his involvement in the distribution of controlled substances.

Walton testified that defendant was told he did not have to answer questions, was free to leave and was not under arrest. Walton further testified that defendant appeared to understand where he was, who Walton was, and by the coherence of the answers to the questions, appeared to understand the questions. Defendant did not appear to be under the influence of drugs or alcohol. At no time during the interview was defendant read a *Miranda* warning. Defendant did not indicate that he wanted to end the questioning or have the assistance of an attorney. Walton testified that he never threatened defendant and was aware of nobody who had made any threats. Walton testified that he did not recall if defendant was told that any statements given could be used against defendant in court proceedings.

The main dispute underlying this motion is whether Walton stated that defendant's statements during the interview would *not* be used in a court proceeding. Defendant testified that after the initial reluctance to discuss the distribution of drugs, Walton stated that the interview was merely to verify Munter's statements and the statements defendant made would not be used against him (defendant) in any court proceeding. Defendant testified that he would not have given any statements had Walton not made such a declaration. Defendant testified that after Walton made the statement, defendant discussed his own involvement. In testimony Walton explicitly denied making any statement that defendant's statements would not be used in a court proceeding.

Much of defendant's cross examination of Walton centered around the method in which the interview was memorialized. Walton has

been employed by the Nebraska State Patrol since 1977 and acknowledged having interviewed or interrogated hundreds of persons during his employment. He knew that the polygraph room in which the interview took place contained an audio tape recorder. Although the recorder was available, Walton chose to not use it during the interview. Although he knew that conflicts frequently arise over precisely what is said during such interviews, he conducted the interview alone with defendant. Walton took notes of the interview and dictated a report from the notes. The dictation was typed and Walton determined that the typed copy accurately reflected the interview as reflected by his notes and recollection of the interview. When he received the typed version of the report, he destroyed his notes. He stated that although no written policy mandates destroying the notes, he maintains a personal policy of destroying them.

Defendant alleges that his incriminating statements were a product of a statement by Walton that statements made by defendant would not be used in court. Walton denies making such a statement.[4] I find the testimony of both defendant and Walton credible. Walton is an experienced officer who is knowledgeable in the practice of interrogation. Defendant agreed with much of Walton's testimony. Defendant also appeared credible, despite two past felony convictions which he freely admitted on cross examination.[5] My conclusion that both witnesses are credible causes difficulty in the resolution of this action because their testimony is in direct conflict: defendant testified that Walton made the particular statement; Walton testified that no such statement was made.

Walton testified that at the beginning of the interview defendant was reluctant to discuss his involvement in the distribution of any controlled substances. Walton told defendant that the purpose of the interview was to determine the validity of Munter's statements. Defendant persisted for ten to fifteen minutes, in Walton's estimation, in his refusal to be forthcoming with any statements. As defendant cogently argued during the hearing, something took place at that time which caused defendant to switch course and make the incriminating statements; some reason arose which caused defendant to abandon his reluctance and make the statements. Defendant testified that the sole reason for the change of heart was that Walton stated that any statements were to be used only to verify Munter's statements and would not be used in court. While Walton disputes this testimony, he is uncertain whether the topic of the use of statements in court ever was discussed during the interview.

■ I am troubled by the fact that the government is unable to present any corroborating evidence for its position. Walton and defendant were the only persons in the polygraph room; Walton apparently chose to have no other officers present. Further, an audio-tape recorder was available in the room. Walton knew of the recorder and knew that disputes between officers and suspects often arise at suppression hearings about issues just such as this. Nonetheless, Walton chose to leave the recorder turned off. Without corroboration of either version of the discussion, the credible evidence presented by the government and defendant is evenly balanced.[6] The government bears the

4. The government does not contest defendant's argument that such a statement would constitute an improper promise rendering defendant's statements involuntary.

5. In part, my determination that defendant was credible is based on his demeanor while testifying and on his willingness to be forthcoming about facts which tend to hurt his cause. He willingly admitted his past criminal history and that Walton informed him that he was free to leave and did not have to take part in the interview.

6. An obvious question arises as to how all of the evidence presented may be credible when the

versions are in conflict. The fact that both Walton and defendant are "credible" witnesses does not exclude the possibility that one or both of them may simply be mistaken. An earnest, but mistaken, belief in the accuracy of one's testimony does not necessarily make it historically accurate. Nor does a historical inaccuracy make the witness a liar. Walton, a sophisticated officer admittedly trained in interrogative techniques recalls not making a statement. Defendant, a relatively unsophisticated individual called upon to discuss his involvement in drug distribution, was told that his statement was needed to verify the statement of Munter. Immediately after that, he believes he was told that his statements would

burden of demonstrating by a preponderance of the evidence that defendant made his statement voluntarily. *United States v. McClinton*, 982 F.2d 278, 283 (8th Cir.1992), citing *Colorado v. Connelly*, 479 U.S. at 167–79, 107 S.Ct. at 521–28. Because I find the evidence to be evenly balanced, I conclude the government has failed to carry that burden. Therefore, defendant's motion to suppress should be granted on this ground.

**IT THEREFORE HEREBY IS RECOMMENDED** to the Honorable Warren K. Urbom, United States Senior District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), that defendant's motion to suppress (filing 8), be granted, in accordance with this report and recommendation.

The parties are notified that unless objection is made within ten days after being served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court's order adopting this recommendation.

Dated January 7, 1994.

---

not be used in court. An unsophisticated defendant, untrained in the law, would likely not be aware of the impropriety of such a promise and might well believe that an officer could make it. In this case, even if I were to find that the promise was not made—which I do not—it is established that defendant genuinely believed, both at the hearing and at the time of the interview, that he heard such a promise. When police misconduct is alleged, the subjective impressions of a criminal defendant are relevant to the determination of voluntariness. *United States v. Bartlett*, 856 F.2d 1071, 1085 (8th Cir.1988), citing *Colorado v. Connelly*, 479 U.S. at 165, 107 S.Ct. at 520–21. In this instance, while one or both of the witnesses might have been mistaken about whether the promise was made, no corroborating evidence is present to make the government's position more likely than defendant's.