**UNITED STATES of America, Plaintiff,**

v.

**Neil Alexander GREY WATER, Defendant.**

**No. C2–04–145.**

United States District Court, D. North Dakota, Northeastern Division.

Jan. 31, 2005.

Brett M. Shasky, U.S. Attorney's Office, Fargo, ND, for Plaintiff.

Daniel J. Borgen, Rosenquist & Arnason LLP, Grand Forks, ND, for Defendant.

## Memorandum Opinion and Order Granting Motion to Suppress Evidence and Denying Motion to Dismiss Indictment

ERICKSON, District Judge.

Before the Court is a motion to suppress statements obtained in violation of *Miranda* and a motion to dismiss on the grounds that 18 U.S.C. § 922(g)(3) is unconstitutional as applied to Defendant (doc. # 12). The United States has filed a brief in opposition. A hearing was held on January 13, 2005, during which these issues were taken under advisement.

### Summary of Decision

The Court finds Defendant was in custody for purposes of *Miranda* when he was handcuffed and directed to sit in a chair because he was restrained as though he was under formal arrest and no reasonable person would have felt free to leave. Accordingly, Defendant's motion to suppress the statements obtained on May 27, 2004, prior to *Miranda* warnings, is GRANTED. The Court further finds that although Defendant has been deprived of some of his property rights with respect to the seizure of his firearm, he has not been denied due process and 18 U.S.C. § 922(g)(3) is not unconstitutional as applied to him. Consequently, Defendant's motion to dismiss the indictment is DENIED.

### Background

On May 27, 2004, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the Bureau of Indian Affairs (BIA), the Federal Bureau of Investigation (FBI), the United States Marshals Service, the North Dakota Bureau of Criminal Investigation (ND BCI), and other local law enforcement officers executed a search warrant at Defendant's residence.

The warrant was issued to search for Darren Strouse, a federal fugitive. Defendant was present during the search and was advised that although he was not under arrest, he was going to be handcuffed while the search was going on at his residence.

Darren Strouse was found at Defendant's residence and was taken into custody. In addition, agents observed large amounts of paraphernalia for ingesting controlled substances, including syringes, spoons with residue, straws, and a light bulb with residue. Agents also discovered a hunting rifle in a rack in the living room.

While handcuffed in the kitchen, Defendant was told twice that he was not under arrest and that did not have to speak to the agents. At no time, however, was Defendant told he was free to leave or that he could ask the agents to leave. Defendant agreed to talk to Special Agent Ron Miller from the FBI and Special Agent Jay McCrary from ATF. During the interview, Defendant was cooperative and answered the agents' questions. Defendant acknowledged the rifle was his and he used it for hunting. Defendant also said that the syringes belonged to his brother for which his brother used them to "shoot" methamphetamine. Defendant stated that he had in the past used a needle to ingest methamphetamine, but that he preferred to smoke it. In addition, Defendant admitted that he last used methamphetamine "about a week ago" and smoked marijuana on a "very frequent basis," the last time being in the early morning of May 27, 2004. Defendant was not arrested at the conclusion of the search and interview.

Defendant argues the interrogation at his residence was illegal because he was in custody for purposes of *Miranda* and he was not informed of his *Miranda* rights. Thus, Defendant contends the statements obtained on May 27, 2004, should be sup-

pressed. In addition, Defendant asserts the application of 18 U.S.C. § 922(g)(3) is unconstitutional because it deprives him of his property without due process.

## Analysis

### 1. Statements Obtained Prior to Miranda Warnings

Defendant contends that the statements he made to law enforcement officers must be suppressed because they were the product of custodial interrogation without the benefit of *Miranda* warnings.

 The rule from *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires that any time a person is taken into custody for questioning, law enforcement officers must, prior to questioning, advise the person of his right to be free from compulsory self-incrimination and his right to assistance of counsel. *United States v. Axsom*, 289 F.3d 496, 500 (8th Cir.2002). Thus, " '[t]he *Miranda* protections are triggered only when a defendant is both in custody and being interrogated.' " *United States v. Boyd*, 180 F.3d 967, 976 (8th Cir.1999) (quoting *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir.1995)). The ultimate question in determining whether a person is in "custody" for purposes of *Miranda* is "whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). Therefore, "[c]ustody occurs not only upon formal arrest, but also under any other circumstances where the suspect is deprived of his freedom of movement." *United States v. Hanson*, 237 F.3d 961, 963 (8th Cir.2001). In considering this question, the relevant inquiry is how a reasonable person in the defendant's position would have understood his situation. *Berkemer v. McCarty*, 468 U.S. 420, 442,

104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). If Defendant believed his freedom of action had been curtailed to a degree associated with formal arrest, and if that belief was reasonable from an objective viewpoint, then Defendant was being held in custody. *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir.1990). In making this determination, courts consider the totality of the circumstances that confronted the defendant at the time of questioning. *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir.2004).

 When determining, under the totality of the circumstances, whether a suspect is in custody, the Eighth Circuit has identified six factors for consideration:

(1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest;

(2) whether the suspect possessed unrestrained freedom of movement during questioning;

(3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questioning;

(4) whether strong arm tactics or deceptive stratagems were employed during questioning;

(5) whether the atmosphere of the questioning was police dominated; or

(6) whether the suspect was placed under arrest at the termination of the questioning.

*Griffin*, 922 F.2d at 1349; *Axsom*, 289 F.3d at 500. The first three factors tend to mitigate the existence of custody, while the last three tend to aggravate it. *Id.* However, while these six factors are intended to be representative, not exclusive, *Axsom*, 289 F.3d at 501, "[t]he ultimate

inquiry must always be whether the defendant was restrained as though he were under formal arrest." *Czichray*, 378 F.3d at 828.

■ Guided by these principles, the Court finds this case presents a close question of custody. As to the first factor, Defendant was told on two separate occasions that he did not have to speak with law enforcement officers and that he was not under arrest. No evidence was presented indicating Defendant could request the officers to leave, or that he was told he was free to leave. Special Agent McCrary did testify that although he saw no reason why the defendant would not have been able to leave if he had requested, Special Agent Miller was the chief officer at the time and would have made the decision. Given that Defendant volunteered to speak with the agents after he was told he did not have to, the Court finds this factor mitigates against the existence of custody.

The second factor concerns whether Defendant possessed unrestrained freedom of movement. As noted earlier, Defendant was not told that he could leave at any time or that he could ask the officers to leave his residence. Instead, Defendant was placed in handcuffs and directed to sit in a chair in the kitchen. The Court does not overlook the fact that Defendant was advised that he was not under arrest despite being handcuffed. The officers testified that the restraints were utilized to ensure Defendant's safety and that of the officers. Nevertheless, "telling a suspect that he is not under arrest does not carry the same weight in determining custody when he is in handcuffs as it does when he is unrestrained." *United States v. Newton*, 369 F.3d 659, 677 (2d Cir.2004) (citations omitted).

Being placed in handcuffs is clearly a restraint associated with formal arrest, giving rise to the conclusion that a hand-cuffed individual is in custody for purposes of Miranda. See *New York v. Quarles*, 467 U.S. 649, 655, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) (an individual surrounded by four police officers and handcuffed was in police custody); *United States v. Acosta–Colon*, 157 F.3d 9, 18 (1st Cir.1998) (the use of handcuffs is one of the most recognizable indicia of traditional arrest and substantially aggravates the intrusiveness of a detention); *United States v. Henley*, 984 F.2d 1040, 1042 (9th Cir. 1993) (suspect is in custody for *Miranda* purposes when he was handcuffed and placed in the back of a police car, even though he was told he was not under arrest); *United States v. Smith*, 3 F.3d 1088, 1098 (7th Cir.1993) (defendant in custody when he was handcuffed and told to sit in a specific place in the grass); *United States v. Guarino*, 629 F.Supp. 320, 324 (D.Conn.1986) (a reasonable person handcuffed and surrounded by agents would have understood he was "in custody"). Because handcuffing Defendant and directing him to sit in a chair in the kitchen curtailed Defendant's freedom of movement during questioning, the Court finds the existence of the second mitigating factor is absent. In contrast, this factor weighs strongly in favor of the existence of custody.

Nevertheless, the Court must analyze the totality of the circumstances and the remaining factors as no one factor is dispositive on the question of custody. *Czichray*, 378 F.3d at 831. The third factor concerns whether the defendant initiated contact with the authorities or voluntarily acquiesced to official requests to respond to questioning. It is undisputed that the law enforcement officers approached Defendant and asked him if he would like to speak to them. Further, Special Agent McCrary testified that Defendant was cooperative and agreed to answer questions.

Although Defendant did not initiate contact with the law enforcement officers, he was cooperative and agreed to the interview. The Court finds the evidence establishes the presence of the third mitigating factor.

Turning to the aggravating factors, no evidence was presented to indicate the law enforcement officers used strong arm tactics or deceptive stratagems during questioning. Further, Defendant was not placed under arrest at the end of the questioning. Therefore, the facts fail to establish the presence of the fourth or sixth factor, which would tend to aggravate the existence of custody.

As to the fifth factor, whether the atmosphere of questioning was police dominated, Special Agent McCrary testified that he assisted in the search as well as Ron Miller from FBI, two United States Marshals, one or two agents from the ND BCI, one agent from the BIA, and possibly other local law enforcement officers. While at least six law enforcement officers participated in the execution of the search warrant, only two agents—Special Agents McCrary and Miller—participated in the interview. The inquiry under this factor is whether the questioning, not the execution of the search warrant, was police dominated. *United States v. Wallace*, 323 F.3d 1109, 1113 (8th Cir.2003). In making this determination, factors including the length and location of the interview are to be considered. *United States v. Brown*, 990 F.2d 397, 400 (8th Cir.1993) In this case, the interview was initiated by law enforcement officers and according to Special Agent McCrary's testimony lasted five to ten minutes. Special Agent McCrary further testified that the interview occurred in Defendant's kitchen and Defendant was cooperative and willing to talk during the interview. Nevertheless, Defendant did not have unrestrained freedom of movement and a suspect's sense of captivity can be further intensified by the intrusive and intimidating environment created when law enforcement officers take control of a person's private residence. *See United States v. Griffin*, 922 F.2d 1343,1355 n. 15 (8th Cir.1990). However, there is no evidence to suggest the agents mistreated Defendant or created a police dominated atmosphere during the interview. Therefore, evidence does not establish this factor which would tend to aggravate the existence of custody.

Having examined the *Griffin* factors regarding custody, the Court finds that two of the "mitigating" factors are present and none of the "aggravating" factors. The Court is then left with the "ultimate inquiry" which "must always be whether the defendant was restrained as though he were under formal arrest." *United States v. Czichray*, 378 F.3d 822, 830 (8th Cir. 2004). Miranda's safeguards become applicable as soon as a suspect is under formal arrest or a suspect's freedom of movement is curtailed to a degree associated with formal arrest. *Newton*, 369 F.3d at 677.

The Eighth Circuit recently determined that when a suspect is questioned in the familiar surroundings of his home and he is informed several times that he does not have to answer questions, as happened in this case, "strong evidence on restraint on freedom of movement to the degree associated with a formal arrest is necessary to overcome the natural inference that such questioning is non-custodial." *Id.* The Court finds that there is unmistakable evidence in this case that Defendant was restrained as though he was under formal arrest. Although Defendant was told he did not have to speak with the agents and he was not under arrest, he was not told he was free to leave or that he could ask the agents to leave. Instead, Defendant

was handcuffed and directed to sit in a chair in the kitchen. Defendant did not have unrestrained freedom of movement. In cases where a person formally at liberty is subjected to formal arrest or arrest-like restraints, specific coercive pressures need not be proved to establish *Miranda* custody; rather, coercive pressures are presumed from the fact of such custody. *Newton,* 369 F.3d at 670 (citing *New York v. Quarles,* 467 U.S. at 654, 104 S.Ct. 2626).

Under the circumstances present in this case, a reasonable person in Defendant's situation would not believe he was free to leave or that he could ask the agents to leave. Further, under *California v. Beheler,* 463 U.S. at 1125, 103 S.Ct. 3517, the ultimate inquiry is whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest. The Court finds the handcuffs coupled with the direction to sit in a chair establish a restraint on Defendant's freedom of movement to a degree associated with formal arrest. The law enforcement officers' statements that Defendant was not under formal arrest during the interview do not obviate the officers' duty to inform a defendant of his *Miranda* rights when he is being restrained in such a manner that a reasonable person would associate with being placed in custody and would not feel free to leave. Thus, Defendant was in custody at the time of the interview and should have been informed of his *Miranda* rights. Accordingly, Defendant's motion to suppress statements obtained on May 27, 2004, prior to being given *Miranda* warnings, is GRANTED.

2. Constitutionality of 18 U.S.C. § 922(g)(3) as Applied to Defendant

■ Defendant argues that § 922(g)(3) is unconstitutional because it deprives him of his property without due process. Defendant contends that under the North Dakota Constitution he has a property right to own a firearm and since he has never been convicted of, nor charged with, a drug crime, the mere allegation that he is a user of illegal drugs deprives him of his right to lawfully own a firearm without due process.

Section 922(g)(3) of Title 18, United States code provides:

It shall be unlawful for any person—

(3) who is an unlawful user of or addicted to any controlled substance to ... possess in or affecting commerce, any firearm or ammunition ... which has been shipped or transported in interstate or foreign commerce.

The constitutionality of § 922(g)(3) has been discussed by the Eighth Circuit and other courts. The discussion most often centers around the meaning of "unlawful user of a controlled substance," a phrase that has not been defined by Congress. Courts have uniformly held the statute is constitutional, even when expressing reservations about its clarity. *United States v. Turnbull,* 349 F.3d 558, 561 (8th Cir.2003) (noting § 922(g)(3) runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and regular drug use); *United States v. Edwards,* 182 F.3d 333 (5th Cir.1999) (finding statute constitutional as applied to the defendant); *United States v. Purdy,* 264 F.3d 809 (9th Cir. 2001) (statute not unconstitutionally vague as applied to the defendant). To sustain a conviction under § 922(g)(3), the United States must prove that the defendant was an unlawful user of a controlled substance, which has been interpreted to mean the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his purchase or possession of a firearm. *Purdy,* 264 F.3d at 813.

Despite the body of case law available to consider a vagueness challenge, it is well-established that vagueness challenges to statutes which do not involve the First Amendment freedoms must be examined in light of the specific facts of a case. *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); *See United States v. Reed*, 114 F.3d 1067 (10th Cir.1997) (concluding it was error for court to consider vagueness challenge to § 922(g) prior to trial, even upon government's proffer of facts to which defendant did not object). Thus, the Court would have to defer resolving any vagueness challenge to § 922(g)(3) until after trial.

The Fifth Amendment prohibits persons from being deprived of their property without due process of law. To prevail on a due process claim, Defendant must show: (1) he had property or a property interest; (2) he has been deprived of that property interest; and (3) it was done without due process of law. *See Serio v. Baltimore County*, 115 F.Supp.2d 509, 514 (D.Md. 2000). First, "property" is a collection of rights, which includes not only the right of ownership and possession but also the right of unrestricted use, enjoyment, and disposal. 63C Am.Jur.2d Property § 1 (2004). "It follows logically that removing a person's right of possession in an object does not necessarily remove all of his property interests in that object.[1]" *Serio*, 115 F.Supp.2d at 515. Defendant's remaining interest—whether it be called ownership or simply a non-possessory right—qualifies as a property interest protected by constitutional due process. *Id.* Thus, Defendant has established the first part of his due process claim. Second, it is undisputed that the seizure of Defendant's firearm has deprived him, at least tempo-

rarily, of any remaining property interest he has in it.

The critical step is that Defendant has to prove that he has been deprived of his property rights in the firearm without due process of law. In determining what process is due, a court should consider three distinct factors: (a) the defendant's interest affected by the seizure; (b) the risk of erroneous deprivation of the defendant's interest by the procedures employed, and the value of additional procedural safeguards; and (c) the governmental interest involved. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

As noted earlier, seizure of Defendant's firearm has deprived him of some of his property rights—that is possession along with use and enjoyment of the firearm. Nevertheless, the public policy underlying Congress' decision to prohibit the possession of firearms by certain persons plays an important role in determining the process which is due. *Covington v. Winger*, 562 F.Supp. 115, 124 (W.D.Mich.1983). The statutory history of § 922 indicates that the statute was intended to keep firearms out of the hands of those not legally entitled to possess them because of a particular status they occupy. *United States v. Ocegueda*, 564 F.2d 1363, 1365–66 (9th Cir.1977). According to the United States Supreme Court, Congress' intent in enacting § 922(g) "was to keep firearms out of the hands of presumptively risky people." *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 113 n. 6, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983). At this point, while Defendant has temporarily lost some of his property rights in the firearm, the govern-

---

**1.** The situation may be different in cases where the seized items qualify as contraband per se. Courts do not entertain a claim contesting confiscation of contraband per se be-

cause one cannot have a property right in that which is not subject to legal possession. *Cooper v. City of Greenwood*, 904 F.2d 302, 304–05 (5th Cir.1990)

ment has an interest in protecting society and keeping firearms out of the hands of drug users, as Congress intended. Thus, the Court finds the governmental interests outweigh Defendant's asserted property rights until a trial can be held to determine if Defendant is in the class of individuals Congress sought to prohibit from possessing firearms. *See United States v. Calor*, 340 F.3d 428, 432 (6th Cir.2003) (finding governmental interests outweigh the defendants interest in maintaining possession of his firearms during the period between seizure and a hearing).

Further, sufficient safeguards are in place to prevent an erroneous deprivation of his property rights. The United States may not hold the firearm indefinitely absent a finding of guilt or a determination that the property is not recoverable. *See Serio*, 115 F.Supp.2d at 518. At the hearing, the United States asserted that it has not disposed of Defendant's weapon and if he is found not guilty at trial, the firearm will be returned to him. At this time, the Court can find no constitutional violation in the United States' seizure or retention of the firearm pending trial.

Finally, it should be noted that under the Commerce Clause, Congress is allowed to regulate the possession of firearms that have been transported at any time in interstate commerce. *See United States v. Letts*, 264 F.3d 787, 790 (8th Cir.2001); *United States v. Shelton*, 66 F.3d 991, 992 (8th Cir.1995) (per curiam). Congress, when acting within the confines of its constitutional authority, is empowered to preempt state law to the extent it is necessary to achieve its federal purpose. U.S. Const. Art. VI, cl. 2. Thus, Congress has decided to prohibit certain individuals from possessing a firearm or ammunition. One of those classes of individuals includes unlawful users of controlled substances. Contrary to Defendant's arguments, the North Dakota Constitutional provision permitting individuals to keep and bear arms for hunting does not trump a federal law prohibiting certain individuals from lawfully possessing firearms. *See United States v. Spencer*, 160 F.3d 413, 414 (7th Cir.1998) (explaining that a state could not by creating a state constitutional amendment to possess child pornography preempt the federal laws that prohibit such possession). Therefore, the Court finds Defendant's argument that he is absolutely entitled to possess a firearm because he has a property right under North Dakota law to be without merit.

### Conclusion

Because Defendant was in custody for purposes of *Miranda* when he was handcuffed and directed to sit in a chair in the kitchen, he should have been informed of his *Miranda* rights. Accordingly, Defendant's motion to suppress statements obtained before he was given Miranda warnings is GRANTED. Further, the Court finds Defendant's motion to dismiss because 18 U.S.C. § 922(g)(3) unconstitutionally deprives him of his property without due process of law is without merit. Therefore, Defendant's motion to dismiss is DENIED.

IT IS SO ORDERED.